IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JOHN WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-2005-DDC-TJJ |
| | ) | |
| NEWMAN UNIVERSITY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Plaintiff's Motion to Disqualify Lewis Brisbois Bisgaard & Smith, LLP (ECF No. 23). Plaintiff John Walker requests that the law firm of Lewis Brisbois Bisgaard & Smith, LLP ("the law firm") be disqualified from representing Defendants in this case because of its representation of Defendant Newman University, Inc. during the investigation of the Title IX complaints at issue. In the alternative, Plaintiff requests that Alan R. Rupe, Jeremy K. Schrag, Christina M. Guerin, and Laura J. Anson, attorneys in the law firm, be disqualified from representing Defendants for the same reason. Defendant Newman University, Inc. ("Newman") opposes the motion. For the reasons set out below, the Court finds the motion should be granted in part and denied without prejudice in part.

**I. Factual Background**

As of October 2017, Plaintiff was the Counseling Program Director and Assistant Professor of Counseling at Newman University, and was also one of Newman's Title IX investigators. That month, Plaintiff was assigned to investigate a Title IX complaint for sexual harassment and gender discrimination filed by a Newman employee. Within the next two months Newman also assigned Plaintiff to investigate three additional Title IX complaints. However,

1

on December 1, 2017, Plaintiff learned that the Newman Board of Trustees and Executive Committee had removed him as the investigator into the Title IX complaints and from the Title IX task force, and had retained the Lewis, Brisbois, Bisgaard & Smith, LLP law firm (the law firm) to conduct an independent investigation into the ongoing Title IX matters.

On December 11, 2017, Plaintiff met with unidentified attorneys from the law firm regarding the Title IX investigations. The Court infers the attorneys who attended the meeting were Mr. Schrag and Mss. Guerin and Anson. Plaintiff also met with Mr. Schrag two additional times during December, also regarding the Title IX investigations.

On January 4, 2018, Plaintiff received a letter from Mssrs. Rupe and Schrag notifying him he would not have any teaching duties for the spring semester and that his employment would not be renewed. Mr. Rupe later responded to a letter he received from Plaintiff's counsel seeking information and action on his client's behalf. Mr. Rupe did not participate in any of the interviews or discussions with Plaintiff, nor was he part of the law firm team that investigated the Title IX complaints. He did not make the decision not to renew Plaintiff's contract with Newman. He received the Title IX investigative reports at the same time Newman's executive committee received them.

II.     **Summary of the Parties' Arguments**

Plaintiff contends that the law firm, and more specifically attorneys Rupe, Schrag, Guerin, Anson, and any others actively engaged in the investigation described above, are precluded by Rule 3.7 of the Kansas Rules of Professional Responsibility from acting as advocates at trial and from engaging in pretrial activity that may cause confusion to the jury at trial.

Newman argues that Mr. Rupe should not be disqualified from representing it because Plaintiff cannot make the showing that Mr. Rupe is a necessary or material witness in this matter

and that any information he could possibly be compelled to give would be cumulative of information provided by the Title IX investigators. Newman further argues that because attorneys Schrag, Guerin, and Anson are not involved in representing a party in this lawsuit, it is unnecessary to disqualify them.

### III. Legal Standard for Disqualification of an Attorney Based upon KRPC 3.7(a) (The Advocate-Witness Rule)

Two sources inform whether a district court should disqualify an attorney.[1] "First, attorneys are bound by the local rules of the court in which they appear. . . . Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law."[2]

The District of Kansas has adopted the Kansas Rules of Professional Conduct ("KRPC") as the "applicable standards of professional conduct" for lawyers appearing in this Court.[3] The Court has the power to disqualify counsel at its discretion based upon these professional standards of ethics.[4] Because disqualification affects more than merely the attorney in question, the court must satisfy itself that this blunt remedy serves the purposes behind the ethical rule in question and that the motion is not being used as directed litigation strategy.[5]

---

[1] *United States v. Stiger*, 413 F.3d 1185, 1195 (10th Cir. 2005).

[2] *Id.* (quoting *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1383 (10th Cir. 1994)).

[3] D. Kan. Rule 83.6.1(a).

[4] *E.E.O.C. v. Orson H. Gygi Co., Inc.*, 749 F.2d 620, 621 (10th Cir. 1984); *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 664 (D. Kan. 1998).

[5] *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1530–31 (D. Kan. 1992).

A motion to disqualify must be decided on its own facts, and the court must carefully balance the interest in protecting the integrity of the judicial process against the right of a party to have the counsel of its choice.[6] The moving party bears the initial burden of going forward with evidence sufficient to establish a prima facie case that a disqualifying conflict exists. The ultimate burden of proof lies with the attorney or firm whose disqualification is sought.[7]

In deciding a motion to disqualify counsel, the trial court balances several competing considerations, including the privacy of the attorney-client relationship, the prerogative of a party to choose counsel, and the hardships that disqualification imposes on the parties and the entire judicial process.[8] "The right to counsel of choice is an important one subject to override for compelling reasons. Even so, this right is secondary in importance to preserving the integrity of the judicial process, maintaining the public confidence in the legal system and enforcing the ethical standards of professional conduct."[9] A motion to disqualify counsel deserves serious, conscientious, and conservative treatment.[10]

Kansas Rule of Professional Conduct ("KRPC") 3.7, upon which Plaintiff relies as the basis for her request to disqualify the law firm, provides:

---

[6] *Kelling v. Bridgestone/Firestone, Inc.*, No. 93-1319-FGT, 1994 WL 723958, at *10 (D. Kan. Oct. 17, 1994); *Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, No. 07-2253-DJW, 2009 WL 902424, at *5 (D. Kan. Mar. 31, 2009).

[7] *Smith v. TFI Fam. Services, Inc.*, 17-02235-JTM-GEB, 2018 WL 2926474, at *3 (D. Kan. June 8, 2018) (citing *Lowe v. Experian*, 328 F. Supp. 2d 1122, 1125 (D. Kan. 2004)).

[8] *Nat'l Bank of Andover, N.A. v. Aero Standard Tooling, Inc.*, 30 Kan. App. 2d 784, 791, 49 P.3d 547, 553 (2002).

[9] *Koch*, 798 F. Supp. at 1530 n.2.

[10] *Id.* at 1530.

> (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where:
> > (1) the testimony relates to an uncontested issue;
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
> > (3) disqualification of the lawyer would work substantial hardship on the client.
> 
> (b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.[11]

One of the strongest rationales for this lawyer-witness rule is to prevent jury confusion over the separate roles of an advocate and a witness.[12] This rationale is that combining the roles of advocate and witness has the potential to prejudice the opposing party because a jury may be unclear whether an attorney asked to testify is making a statement that should be taken as proof or as an analysis of the proof.[13]

The District of Kansas uses the so-called *Smithson* test in determining whether potential testimony is necessary and whether counsel should be disqualified based on KRPC 3.7.[14] Under the *Smithson* test, a motion for disqualification should not be granted unless: (a) the attorney would give evidence that is material to the issue being litigated, (b) such evidence is unobtainable from other sources, and (c) the testimony is prejudicial or potentially prejudicial to

---

[11] KRPC 3.7.

[12] *See Schneider v. Citimortgage, Inc.*, No. 13-4094-SAC, 2014 WL 6632939, at *2 (D. Kan. Nov. 21, 2014); *Lowe v. Experian*, 328 F. Supp. 2d 1122, 1126 (D. Kan. 2004).

[13] *Chapman Eng'rs, Inc. v. Natural Gas Sales Co.*, 766 F. Supp. 949, 957 (D. Kan. 1991) (explaining rationale for Model Rule of Professional Conduct 3.7(a) upon which the KRPC 3.7(a) is based).

[14] *See Schneider*, 2014 WL 6632939, at *2 (citing *LeaseAmerica Corp. v. Stewart*, 19 Kan. App. 2d 740, 751, 876 P.2d 184, 192 (1994) (adopting *Smithson* factors).

the testifying attorney's client.[15] The court will not grant a motion to disqualify unless all three of the *Smithson* factors are met.[16]

IV.     Analysis

    A.     Whether the attorneys possess material evidence

Plaintiff contends any attorney at the law firm who was actively engaged in the Newman investigation possesses personal knowledge of what he refers to as the "repeat investigations" which ultimately led to termination of his employment. Plaintiff asserts it is clear the attorneys will be material witnesses in the case and cannot act as advocates at trial or engage in other pretrial activity that may be used in trial and could cause jury confusion. As Plaintiff points out, one of the central issues in this case is the motivation or reason for Plaintiff's termination. Plaintiff argues their knowledge is "evidence that is material to the issue being litigated," thus satisfying the first *Smithson* factor.

Defendant addresses this issue with respect to Mr. Rupe, suggesting his involvement was limited to sending the January 4, 2018 letter providing Plaintiff notice that he was not being assigned teaching duties and his contract was not being renewed. Defendant denies the decision was Mr. Rupe's; his role was merely to relay Newman's decision. The February 13, 2018 letter Mr. Rupe sent only responded to one he had received from an attorney who was acting on Plaintiff's behalf. Defendant further argues that Mr. Rupe should not be disqualified because although the law firm attorneys took over the same Title IX investigations that Plaintiff had been handling, Mr. Rupe was not a Title IX investigator. Defendant acknowledges Mr. Rupe was

---

[15] *Id. See also Smithson v. U.S. Fid. & Guar. Co.*, 411 S.E.2d 850, 856 (W. Va. 1991).

[16] *Smithson*, 411 S.E.2d at 856.

6

present at the interview of Mandy Greenfield, [17] but points out that Ms. Greenfield had counsel present and "the interview occurred after Newman decided not to renew Plaintiff's contract."[18] And Newman supports its argument that the Title IX investigation did not lead to Plaintiff's termination by pointing out the law firm did not deliver the Title IX report to Newman until 12 days after Plaintiff received his non-renewal letter. Finally, Defendant argues that Plaintiff has not shown that Mr. Rupe participated in Newman's decision not to renew his contract, and that any information Mr. Rupe possesses results from his serving as Newman's counsel.

Plaintiff offers no declaration to support his allegations concerning Mr. Rupe's involvement in Plaintiff's termination. Defendant has submitted a declaration from Mr. Rupe in which he states he was not part of the law firm team that investigated the Title IX complaints, nor did he participate in any of the interviews or discussions with Plaintiff that were conducted as part of that investigation; he received the Title IX reports at the same time Newman's Executive Committee received them; and he did not make the decision not to renew Plaintiff's contract.[19]

Mr. Rupe's declaration does not provide support for Defendant's assertion that the interview of Mandy Greenfield in which Mr. Rupe participated occurred *after* Newman decided to terminate Plaintiff's employment: both the interview and the letter to Plaintiff occurred on the same day, January 4, 2018. Neither does it offer factual support for Defendant's argument that

---

[17] Ms. Greenfield is the Plaintiff in a separate action pending in this district against Newman University, Inc. and others. *See* No. 18-cv-2655-DDC-TJJ. In that case, the Court has issued an order on a similar motion to disqualify counsel (ECF No. 40).

[18] ECF No. 26 at 7.

[19] ECF No. 26-1 ¶¶11, 13-15.

the Title IX investigation did not lead to Plaintiff's termination. The Court realizes this is the finding Newman will seek to demonstrate in this case, but merely pointing out that the Title IX report was issued 12 days after Plaintiff received notice of his termination does not negate a possible causal link.

Plaintiff does not dispute and the Court accepts that Mr. Schrag and Mss. Guerin and Anson comprised the Title IX investigating team. Although Newman never identifies Mr. Rupe's role, he states in his declaration that he is "an attorney representing Defendant Newman . . . in this lawsuit."[20] Nor does Newman indicate when it retained or otherwise involved Mr. Rupe. Mr. Rupe's affidavit states only that "[o]n November 30, 2017, Newman University hired Lewis Brisbois attorneys Mr. Jeremy Schrag, Ms. Christina Guerin, and Ms. Laura Anson to investigate Title IX complaints that were made to Newman."[21] And while the Court also credits Mr. Rupe's denial that he *made* the decision not to renew Plaintiff's contract with Newman,[22] he does not deny that he provide legal advice to Newman on the issue. Instead, Defendant argues that Plaintiff has not shown Mr. Rupe participated in the decision.[23]

The Court concludes that the law firm's work on behalf of Newman evolved between December 1, 2017, when Newman removed Plaintiff from the Title IX investigations, and January 4, 2018, when Mr. Rupe sent Plaintiff a letter informing him that Newman had decided not to renew Plaintiff's contract. According to Newman, it had received several good-faith

---

[20] ECF No. 26-1 ¶2.

[21] *Id.* ¶10.

[22] *Id.* ¶15.

[23] ECF No. 26 at 8.

8

complaints regarding Plaintiff's behavior during the fall 2017 semester, and at some unspecified time it also began to have concerns about the Title IX investigations that presumably led Newman to hire lawyers to take over the investigations.[24] Understandably, Newman availed itself of legal advice. The Court is in no way critical of Newman or its counsel, nor does it minimize Newman's right to have the counsel of its choice. However, the facts demonstrate that Mr. Schrag and Mss. Guerin and Anson possess evidence material to the determination of the claims and defenses being litigated. At this point, the Court cannot determine whether Mr. Rupe likewise possesses such evidence.

### B. Whether the evidence can be obtained elsewhere

Plaintiff acknowledges he is capable of testifying about his meetings with the law firm's Title IX investigators. He summarily concludes that the material evidence cannot be obtained elsewhere because no one other than the attorneys have firsthand knowledge of their investigation, and Mr. Rupe is the only person who possesses information used to terminate Plaintiff's employment.

Newman does not address this factor for anyone other than Mr. Rupe. With respect to relevant information in his possession, Newman cites Kansas Rule of Professional Conduct 3.7 which obviates disqualification if the lawyer's testimony is merely cumulative. Newman argues that Mr. Rupe should not be disqualified because (1) Newman officials would know more about the complaints the university received regarding Plaintiff, (2) Mr. Rupe attended no interview of Plaintiff, and (3) Mr. Rupe attended only one interview that was also attended by the law firms' Title IX investigators, and Plaintiff does not demonstrate its relevance to his claims.

---

[24] *Id.* at 2.

The Court finds, and Newman does not argue otherwise, that Mr. Schrag and Mss. Guerin and Anson possess evidence that cannot be obtained elsewhere.

Plaintiff's assertion that Mr. Rupe is the only person who possesses information used to terminate his employment is wholly unsupported, and the Court rejects it. The facts as presented provide no current basis to find that Mr. Rupe possesses material evidence that cannot be obtained elsewhere. Accordingly, the Court finds that Plaintiff has not adequately met the second *Smithson* factor with regard to Mr. Rupe.

### C. Whether the testimony is prejudicial or may be prejudicial to Newman

Finally, Plaintiff addresses the third factor, arguing Newman could be prejudiced by Mr. Rupe's representation because he may be constrained from making certain arguments by virtue of his own involvement, or may be tempted to minimize his own conduct at the client's expense.[25] Because Newman denies that Mr. Schrag or Mss. Guerin and Anson will be involved in litigating this case, the Court need not consider them in that role. Plaintiff does argue that confusion or prejudice could arise from them testifying and being cross-examined by Mr. Rupe.

At this point, the Court does not find that Mr. Rupe's representation of Newman has the potential of causing prejudice. Plaintiff has not satisfied the third *Smithson* factor.[26]

## V. Whether the Title IX Investigative Lawyers Should be Disqualified

---

[25] In his opening brief, Plaintiff erroneously cast this factor as one that examines whether he could be prejudiced by the law firm's testimony. He corrected the argument in his reply brief and explained how their testimony could be prejudicial to Newman.

[26] Newman also argues that it reserves the right to waive any conflict of interest under KRCP 1.7 or 1.9. Rule 3.7(b) permits a lawyer to act as advocate in a trial in which another lawyer in the lawyer's firms is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9. Rules 1.7 and 1.9 are not applicable in this situation, as they address conflicts of interest between current clients (Rule 1.7) and between a person and a former client (Rule 1.9).

Plaintiff separately argues that Mr. Schrag and Mss. Guerin and Anson should be disqualified because they acted as internal investigators on behalf of Newman and will be witnesses. The Court need not consider the issue because Newman denies those attorneys are involved in representing it in this lawsuit.

## VI. Whether Mr. Rupe Should be Precluded as an Unsworn Witness

Plaintiff also argues Mr. Rupe should be disqualified as an "unsworn witness." The situation occurs when an attorney has first-hand knowledge of the events presented at trial, thereby enabling the attorney to impart that knowledge to the jury without testifying under oath or being subject to cross-examination.[27] Newman argues the request is premature because it is too early to tell whether Mr. Rupe has first-hand knowledge and if so, whether it will be material at trial. And even if his participation in pretrial proceedings would ultimately result in his testimony being presented at trial, Newman asserts that the Court could restrict Mr. Rupe's participation in particular proceedings as a remedy. Newman suggests that if Mr. Rupe agreed to be deposed, the issues surrounding his first-hand knowledge may be capable of resolution short of disqualification and if not, Plaintiff could be allowed to renew the instant motion.

Plaintiff disagrees, arguing that he would risk an adverse ruling by waiting until the litigation were well underway. Moreover, Plaintiff asserts that an attorney who is likely to be a necessary witness and has had contact with the opposing party warrants disqualification not only as an advocate at trial, but also in evidentiary hearings and depositions.[28]

---

[27] *See U.S. v. Evanson*, 584 F.3d 904, 910 (10th Cir. 2009).

[28] *See Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, No. 07-2253-DJW, 2009 WL 902424, at *7 (D. Kan. March 31, 2009).

KRPC 3.7(a) speaks to an attorney who acts as an advocate "at trial." As Judge Waxse noted, the primary purpose of the rule is to avoid jury confusion at trial, and the rule does not automatically require a lawyer's disqualification from all pretrial activities.[29] In this instance, the Court agrees the motion is premature. The Court has full confidence in the integrity and capabilities of counsel in this case, and therefore directs counsel to confer no later than June 7, 2019 about the most efficient and productive manner in which they may explore the issues surrounding any first-hand knowledge Mr. Rupe may possess. Although the Court is denying Plaintiff's motion without prejudice with respect to Mr. Rupe, the Court encourages the parties to attempt to resolve this issue short of further motion practice.

Given the facts of this case and the parties' claims and defenses, the Court determines that Mr. Schrag and Mss. Guerin and Anson are disqualified from representing Newman in this case. Mr. Rupe is not.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Disqualify Lewis Brisbois Bisgaard & Smith, LLP (ECF No. 2) is **GRANTED** with respect to Mr. Schrag and Mss. Guerin and Anson. The motion is **DENIED** without prejudice with respect to Mr. Rupe.

Dated this 28th day of May, 2019, at Kansas City, Kansas.

*Teresa J. James*
Teresa J. James
U. S. Magistrate Judge

---

[29] *Lowe v. Experian*, 328 F. Supp. 2d 1122, 1126 (D. Kan. 2004).