## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

JOHN WALKER,                          )
                                    )
                 Plaintiff,         )
                                      )
vs.                                   )   Case No.  2:19-cv-02005-DDC-TJJ
                                      )
NEWMAN UNIVERSITY, INC, et al.,       )
                                      )
               Defendants.        )

### PLAINTIFF'S MOTION TO COMPEL

Plaintiff, by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 37(a)(3)(B) and Local Rules 37.1 and 37.2, moves the Court for an Order compelling complete responses without objections to of Plaintiff's First Interrogatories and First Request for Production of Documents to Defendant Newman University, including its Privilege Log. Plaintiff also seeks rulings on FERPA-related questions and issues. In support of this Motion, Plaintiff submits the following Memorandum:

### I.      BACKGROUND FACTS AND SUMMARY OF THE CASE

Plaintiff John Walker alleges violations of Title IX of the Education Amendments of 1972 ("Title IX"), of Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), of the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"). Additionally, Plaintiff alleges retaliatory discharge for whistleblowing, defamation, invasion of privacy, abuse of process and malicious prosecution. Plaintiff John Walker's employment with Newman University began in August 2008. When he was discharged in 2018, he was Newman's Counseling Program Director and a tenure-track Assistant Professor of Counseling. Beginning in fall 2015, Plaintiff served as a Newman volunteer Title IX investigator.

Walker was the only licensed clinical behavioral health representative of the Behavioral/Threat assessment and Intervention Team member. Between early October and late November 2017, at least four Title IX complaints were filed at Newman. The first complaint for sexual harassment and gender discrimination concerned a Newman executive officer, Victor Trilli.  Plaintiff was asked to investigate this Title IX complaint. During the course of the investigation into the first complaint, three additional Title IX complaints were initiated.

After nearly two months of investigation on the first complaint, and as they were nearing the investigation's conclusion, Plaintiff learned that Newman hired Lewis, Brisbois, Bisgaard & Smith, LLP ("Lewis Brisbois") "take over" the Title IX investigations as independent investigators. Plaintiff met on several occasions with attorneys from Lewis Brisbois, regarding the Title IX investigations. On January 4, 2018, Plaintiff learned that his position had been posted to the University's employment website listed as "open."  After Plaintiff sought clarification, at approximately 4:15pm on January 4, 2018, Plaintiff received correspondence at his Newman email account from Alan Rupe and Jeremy Schrag of Lewis Brisbois, notifying him that he would not have any teaching duties for the spring semester and that his employment would not be renewed, effectively terminating his employment with Newman.  The correspondence also stated that he was not to come on campus and that he was not to have contact with faculty, staff or students.

Defendant chooses to argue it did not terminate Plaintiff's employment and instead did not renew his contract.  For purposes of this motion, instead of using terminate/not renew his contract throughout this Motion, Plaintiff will instead just state "terminate."

Between January 4, 2018 and January 10, 2018, Defendants made false statements to the Newman community claiming that a mental and emotional health assessment conducted by

qualified university officials determined Plaintiff was a significant security risk and threat. At 4:45 p.m. on January 4, 2018, Defendant Long and David Shubert held a meeting in the Hufford Conference Room in McNeil Hall attended by faculty and staff, where Long informed faculty and staff that Newman University had terminated Plaintiff's employment. Long further informed staff that she was not merely taking precautions when she put the campus in lockdown and immediate crisis mode because Walker posed a serious, credible threat.  Long and Shubert ended the meeting by telling the faculty and staff that Long and Shubert were going to go to each campus building to inform them about the crisis and lockdown to the Walker security threat. But, Plaintiff was never questioned about his mental health let alone evaluated by a professional. Plaintiff was never determined to be a threat to himself or others based on a professional mental health assessment.  Nevertheless, these false statements were intentionally disseminated around campus and a campus-wide event canceled due to fears that Plaintiff was going to shoot-up Newman University.

Plaintiff's lawsuit arises from the retaliatory termination of his employment at Newman University, the defamatory statements, and a false and meritless Petition for Order of Protection filed by Defendant Long.

## II.      CERTIFICATION PURSUANT TO D. KAN. R. 37.2

1.      Plaintiff served his first request for production of documents to Defendant Newman University, Inc. and First Interrogatories to Defendant Newman University on July 24, 2019. (ECF Doc. 52).

2.      Defendant responded to Plaintiff's First Interrogatories on September 23, 2019 **Ex. 1**, Defendant's Objections and Answers to Plaintiff's First Interrogatories. (ECF Doc. 66).

3.      Defendant responded to Plaintiff's First Request for Production of Documents on October 10, 2019.  **Ex. 2**, Defendant's Objections and Response to Plaintiff's First Request for Production. (ECF Doc. 72).

4.      On October 10, 2019, Defendant emailed Plaintiff its Privilege Log with 72 entries. This will be referred to as "Privilege Log A" with lines or Entries referenced as Logs A1-A72, and it is attached as **Ex. 4.** (ECF Doc. 72).

5.      On October 21, 2019, Plaintiff's counsel communicated in writing to defense counsel that Defendant's answers and responses to the interrogatories were inadequate or contained unfounded objections. **Ex. 3**, S. Brown Letter. On November 7, 2019, Defendant served Supplemental Responses to Plaintiff's First Request for Production of Documents and a First Supplemental Privilege Log with 513 entries, all new. (ECF Doc. 81). This will be referred to as Defendant's "Privilege Log B," and is attached as **Ex. 5.**  All 513 entries are new entries not previously included on Defendant's Privilege Log A, and the numbering restarts at one (1). Entry 514 is incomplete.  Lines or Entries referenced from Privilege Log B will be referenced as B1-B513.

6.      Privilege Log B's last entry, B514, was incomplete, which Plaintiff's counsel assumed was just a small error.  In the early morning hours on December 3rd, Plaintiff's counsel emailed opposing counsel seeking confirmation that Log B was complete.

7.      Unfortunately, Log B was incomplete.  At 3:00 p.m. on December 3, 2019, Defendant produced the Defendant's First Supplemental Privilege Log (same name as the log produced November 7, 2019), and it has 676 entries.  It is attached as **Ex. 6** and appears to have same line Entries 1-513.  However, it has additional information withheld from production, Entries 514-676 transmitted for the first time on December 3. These new entries (C514-C676)

will be referenced as Privilege Log C, and attached as **Ex. 7.**  Privilege Log C is combined with the first two pages of Privilege Log B for ease of reference.

8.      Defendants' counsel indicated that they intended to send the full log featuring B1-513 and C514-676 on November 7th, but they inadvertently transmitted the incomplete Log B. Plaintiff understands and recognizes this was unintentional and was likely a PDF conversion error due to the large file size of the privilege log.

9.      On November 13, 2019, Plaintiff's counsel Sarah Brown and Defendants' counsel Kevin Miller agreed to confer on November 21, 2019 concerning Defendant's inadequate answers and responses to the requests for production and the interrogatories.

10.     On November 21, 2019, attorney Brown was informed Kevin Miller was leaving the Lewis Brisbois law firm, and thus Ellen Rudolph would handle the call.

11.     The parties conferred for approximately one hour and fifteen minutes on Thursday, November 21 regarding the interrogatories and requests for production. They were not able to reach agreement on FERPA or privilege issues. The parties then conferred in person on November 22 and discussed FERPA issues.  Plaintiff's counsel specifically asked how many students were impacted by FERPA redactions and withholdings in this case and in *Greenfield v. Newman University, Inc.*, et al., Case NO. 2:18-cv-02655 ("*Greenfield* case").  Opposing counsel did not know that number, and Plaintiff explained it was important to know this information so we could determine what to compel.  Defendant has not provided this information for either case.

12.     The Court granted Plaintiff's motion to extend the deadline for Plaintiff to file a motion to compel until December 2, 2019, so the parties could confer given the Courts rulings in the *Greenfield* case on Friday, November 22, 2019 and make an effort to reach agreement on their discovery disputes.

13.     Counsel conferred by email November 22 (**Ex. 19)**, and November 25, 2019 (**Ex. 20)**.

14.     The parties conferred for more than two hours by phone the afternoon of Monday, December 2 in an effort to reach agreement on discovery disputes.

15.     Plaintiff requested a one-day extension through December 3, 2019 so that Plaintiff could better organize the disputes, seek FERPA rulings so that the parties could potentially narrow the discovery issues and generally seek supplemental information on the privilege log and in responses to narrow the overwhelming number of discovery issues.

16.     The Court granted an extension through December 3, 2019, which was unopposed by Defendant.

17.     Counsel conferred by email on December 3, 2019 concerning FERPA and other privilege log issues. **Exs. 21 and 22**.

18.     Unfortunately, due to another case deadline, Plaintiff's counsel was unable to review the 163 additional privilege log entries until the evening of December 3, 2019.  Initially, counsel did not intend to address Log C entries in this Motion to Compel other than a few brief references forecasting Log C issues, but it became apparent after beginning review that the entries should be incorporated within one comprehensive Motion to Compel if time permitted. Counsel attempted to review this information and incorporate it within the existing Motion to Compel by the midnight deadline.

19.      Review of Log C was complicated and protracted due to the fact that Entries C514-C655 of the log directed the reader to the redacted produced documents for information that belongs in columns four (4) through seven (7) on the privilege log for those entries. So counsel has to locate each individual document, which spanned the range of NWA0002855-

6

0017877 to try to determine the date, creator/sender, receivers and a description for each entry. Privilege Logs B and C also did not include the "what is withheld" column included on Privilege Log A, so Plaintiff also had no idea if a document was withheld entirely from production until searching for it.

20.     Given the complications with the new entries, shifting priority of discovery issues given the insufficient information available to make determinations about privilege and privacy issues for the new entries, counsel was unable to complete the review and incorporate the information in an organized manner before midnight and sought another extension of several hours through December 4 to finish the review and incorporate Log C into this Motion.

21.     The Court extended Plaintiff's deadline to file the Motion to Compel through December 9, 2019.

22.     Plaintiff sent another Golden Rule email on December 4, 2019 in an attempt to resolve the privilege log issues. **Ex. 23**, Vernon Final Golden Rule Email. In that email Vernon states in part:

> As we discussed on Monday and I emphasized in my emails on Tuesday, Defendant's privilege logs do not sufficiently describe the materials, that Defendant has objected to producing based on work product, attorney client privilege, FERPA and other privacy concerns, so that Plaintiff can determine the relevancy of the materials being redacted or withheld, whether the alleged privilege or privacy objection applies and whether the materials may contain non-privileged facts. Plaintiff cannot tell which privilege log entries are responsive to any particular discovery request.
>
> All or almost all of the 676 entries are deficient and do not contains the details required by Rule 26(b)(5). You have not identified students by a pseudonym and will not tell Plaintiff how many students' information has been redacted . . . .
>
> For these 251 entries, Defendant provides no date of the item, no author of item, no identity of recipient(s), no description of document and no justification for why it is work product or a privileged communication – instead the Log entry just directs you to the produced document. Even more disturbing, is that some and

many times all of the information is NOT discernible from viewing those documents . . . .

We are asking one final time that Defendant withdraw its improper objections and supplement all deficient entries on your privilege log.  We will be asking the court to order the production of all materials for which you have improperly objected and for all the materials that have not been described with sufficient detail in compliance with Rule 26(b)(5).  You have clearly communicated that Defendant's position is that Plaintiff's requests are unduly burdensome, and this communication is not intended to harass or frustrate you.  It is merely a final attempt to resolve these issues.

23.     Defendant responded to Plaintiff's Final Golden Rule Email today, December 9. **Ex. 24**.   In it, Defendant conflates golden rule discussions on the *Greenfield* case with discussions on the *Walker* case.  Plaintiff's response is enclosed as **Ex. 25**.

The undersigned counsel believes that reasonable efforts given time constraints have been made to obtain complete responses to Plaintiff's interrogatories and first document requests without Court intervention.  However, due to the vast number of requests, interrogatories and privilege log entries that remain at issue and fundamental FERPA and privilege issues related to insufficient information, not every single issue and specific entry on the privilege logs were discussed.

## III. ADDITIONAL DISCOVERY ISSUES PREVENTING PLAINTIFF'S REVIEW AND EVALUTION OF DEFENDANT'S DISCOVERY RESPONSES

Plaintiff is unable to reasonably evaluate hundreds of privilege log entries due to FERPA issues, redactions and insufficient information as described more fully throughout this Motion. As noted above, extensive information that has been redacted, some partially and some fully or withheld from production entirely (due to alleged privileges or privacy concerns (586 entries[2] as of December 2 and 748 entries as of 3:00 p.m. on December 3). Plaintiff simply has insufficient information available to make determinations as to the withheld information.

---

[2] Many entries appear to include numerous emails or more than one document.

Additionally, the following issues have further impeded Plaintiff's efforts to timely obtain and review discovery:

1.      Based on privilege log entries, Plaintiff has no idea which entries reference the same student whose information was withheld in another entry.

2.      With a few exceptions, review of Defendant's discovery responses provides little to no information for Plaintiff as to how many students, which students or which documents redacted or withheld due to FERPA are responsive to any given discovery request.  A review of many of Defendant's privilege log entries provides no additional information as to the topic or content of the withheld documents.

3.      Of the 748 entries, 678 of the Walker Log Entries having no indicated of whether information was merely redacted or entire documents withheld.

4.      Many documents with partial redactions to conceal what Defendant believes to be information protected by FERPA is interfering with comprehension of the document.   See attached **Exhibit 10,** item referenced in Log Entry A1**.**

5.      FERPA documents have been inconsistently handled.   Student information on some documents has merely been redacted on produced documents. See Ex. 10. Other documents and recordings with student information, many seemingly highly relevant and case-critical documents, are being withheld *entirely* from production due to FERPA.  This seemingly arbitrary determination is prejudicing Plaintiff and seems to benefit Defendant as so many highly relevant materials have still not even been received and reviewed by Plaintiff.

6.      As Plaintiff argued in the *Greenfield Case*, many of the documents redacted or withheld from production due to FERPA concerns are not actually educational records as defined by FERPA.

7.      Based on Defendant's discovery responses and privilege log entries, Plaintiff has no idea how many students are included in the information redacted or whether entire documents are being withheld due to FERPA – it could be three (3) students or it could be 50 students. Plaintiff has asked numerous times for this information, but Defendant has not provided an answer. S*ee* Exs. 20-25.   Plaintiff's counsel clarified to opposing counsel that spreadsheets with lists of students should be excluded from the number Plaintiff seeks.  Specifically, Plaintiff does not seek any information or supplementation concerning the Entries listed in Section 2.A, below.

8.      As argued below in Section E., log entries are deficient where dates are missing, the type of document is missing (notes, emails, memo, etc), Defendant claims something was created at the direction of an attorney but no attorney is identified and no date of creation is given, and the answers to interrogatories and requests for production merely mentioning information has been withheld without identifying which bates numbers or entries are responsive.

9.      Plaintiff cannot tell what information being redacted or withheld from production has already been produced by Plaintiff.   If many of the documents or recordings have been produced by Plaintiff, then those materials could be removed from dispute.  For example, when asked opposing counsel indicated she *thought* all of the recordings withheld were ones already produced by Plaintiff, however, she said she would check, but never replied back.  Upon review, there is at least one recording and possibly others that have not been produced.

For those reasons, Plaintiff is unable to narrow discovery disputes and seek to compel on many issues at this time.   The arguments below attempt to summarize the issues and seek both judicial guidance on FERPA and supplemental information about the documents and information

on the privilege log so that Plaintiff can reasonably evaluate the discovery issues and better determine what he should seek to compel.

## IV. ARGUMENTS

### A. NOT IN DISPUTE

#### 1. Interrogatory Responses

Plaintiff has no issues with Defendant's responses to Interrogatory Nos. 3, 9, 10, 11 and 12. Defendant agreed to supplement Interrogatory Nos. 3 and 9. Defendant clarified that its responses to Interrogatory 10 (affirmative defense of estoppels, unclean hands, waiver and/or laches), Interrogatory 11 (affirmative defense that damages suffered by Plaintiff were caused in whole or in part by an intervening or supervening cause), and Interrogatory 12 (affirmative defense that any damages suffered by Plaintiff are the result of the acts or omissions of Plaintiff or others, over whom Defendants had no control or responsibility) were complete and up-to-date when Defendant answered that it is currently unaware of any responsive principal and material facts supporting these affirmative defenses.

#### 2. Privilege Log Entries

The following privilege log entries are exempted from all requests made in this motion because sufficient information is available for Plaintiff to determine that he does not seek to compel this information or need additional information determine that at this time these entries to make relevancy determinations: A4, B23, B25-26, B54-55, B57-65, B72-75, B98, B101-107, B109-160, B163-171, B173-195, B197-209, B211, B214-228, B230-232, B242-243, B248-256, B259, B261-262,  B264-266, B272, B274-276, B280-283, B310-B311, B366-367, B370-371, B374, C656 (only if Defendant confirms it is just firm logo unrelated to any other documents), C658, C660, C673-674.

### 3. Requests for Production

Plaintiff has many issues with information and documents that have been redacted or withheld and with hundreds of privilege log entries.  Defendant has generically objected to certain requests for production as seeking privileged information or work product. In some of Defendant's discovery responses it notes responsive documents or information clearly being withheld due to a privilege, work-product or privacy claim, but the answer does not specify or describe what is being withheld indicate this.  The answers do not point Plaintiff to specific Bates numbered pages or privilege log entries to find that information.  Most of the privilege log entries provide insufficient information to inform Plaintiff what discovery request the log information is responsive to or permit evaluation of why the document may be relevant.  For other Requests, there may be no indication that responsive materials were withheld due to FERPA in response to certain Requests, even though some responsive documents clearly were withheld.

As such, Plaintiff must err on the side of caution and does not feel comfortable stating many requests are not in dispute given the 750 privilege log entries Plaintiff cannot trace to any specific request. At this time, given the information available to him, Plaintiff can only state that Requests 1, 4, 12, 19, 26, 27, 28, 31, 82 and 83 are not disputed.

### B.  SUPPLEMENTAL RESPONSES TO REQUESTS FOR PRODUCTION

For the reasons set forth in Section A.2., Plaintiff requests that Defendant be compelled to supplement its responses and objections to Plaintiff's First Requests for Production by specifically referencing the bates numbers or Privilege Log Line Number of responsive documents that have been significantly redacted (most or all content redacted) or withheld completely.

### C.  PSUEDONYMS FOR STUDENTS

Plaintiff has requested that each student 1) whose identity is responsive but has not been provided in the answer to an interrogatory, 2) whose information has been redacted from a document or item that has been entered on the privilege log, or 3) whose information has resulted in pages of documents, documents or recordings being withheld from production due to FERPA as identified on the privilege logs be identified by a pseudonym such as *Student 1*, *Student A*, or some combination of letters or numbers in Defendant's responses and in Defendant's privilege logs so that Plaintiff can determine and identify which students records are relevant and proportional to the needs of the case and seek to compel such information.  This will also provide Plaintiff an answer to its question concerning how many students' information is impacted by Defendant's redactions.

Defendant denied Plaintiff's request that these students be identified by pseudonyms.  It is impossible for Plaintiff to evaluate the more than 343 FERPA privilege entries without knowing how many students are involved and which documents involve the same student. Plaintiff has no way to move to compel a student's information and the Court order production of such information without a common pseudonym for everyone to refer to.

As such, Plaintiff seeks an order compelling Defendant to supplement its responses and privilege logs to identify each responsive student by a pseudonym.  Plaintiff then seeks several weeks to evaluate those materials and request this Court order the production of specific information and documents related to each such student.  Plaintiff is not seeking the information for the log entries listed in Section A.2. above.

### D..  ATTORNEY CLIENT PRIVILEGE AND WORK-PRODUCT DOCTRINE

**1. Defendant must make clear showing by describing in detail protected information or documents**

As the party objecting to producing these items or providing the responsive information, Defendant must make a "clear showing" supporting each objection. *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000). Defendant must "describe in detail the documents or information to be protected and provide precise reasons for the objection to the discovery. The Federal Rules of Civil Procedure require a fairly detailed and specific showing to withhold discovery on privilege grounds." *Kannady v. Ball v. Geico Indemnity Insurance Company, 292 F.R.D. *644-45* (internal quotations omitted)(citing *McCoo*, 192 F.R.D. at 680). Specifically, Fed. R. Civ. P. 26(b)(5) requires that a party, claiming any such privilege or work-product doctrine protection, must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *In Kannady*, Judge Sebelius notes that "[t]his detailed and specific showing required under Rule 26(b)(5) is typically presented in the form of a privilege log," which should include the following based upon District of Kansas precedent:

(1) A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;

(2) The date upon which the document was prepared;

(3) The date of the document (if different from # 2);

(4) The identity of the person(s) who prepared the document;

(5) The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;

(6) The purpose of preparing the document, including an evidentiary showing, based on competent evidence, supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of

adversarial litigation that was real and imminent; a similar evidentiary showing that the subject of the communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, that the documents do not contain or incorporate non-privileged underlying facts;

(7)  The number of pages of the document;

(8)  The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

(9)  Any other pertinent information necessary to establish the elements of each asserted privilege."

*Kannady* at *645 (citing *In re Universal Serv. Fund Tel. Billing Practices Litig.,* 232 F.R.D. 669,

673 (D. Kan. 2005). The party,

> must provide sufficient information to enable the Court to determine whether *each element* of the asserted objection is satisfied.  This burden can only be met by an evidentiary showing based on competent evidence and cannot be discharged by mere conclusory assertions or blanket claims of privilege.  Moreover, the objecting party has the burden to establish the existence of the privilege or immunity prior to the time the court is asked to determine its sufficiency and applicability.  A party's failure to meet the required showing when the trial court is asked to rule upon the existence of the privilege is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made.  The applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document.

*Kannady* at *645-46 (internal citations omitted).  "**It is well settled that if a party fails** to make

the required showing under Fed.R.Civ.P. 26(b)(5)(A) by not producing a privilege log or **by**

**producing an inadequate one, courts may deem the privilege waived**." *Id*. at *646 (emphasis

added) (citing *Sonnino* v. Univ. of Kan. Hosp. Auth., 221 F.R.D.661, 670-71 (D. Kan. 2004)).

On Exhibits 5 and 7, Defendant Newman has hundreds of items listed on its privilege log

for which it almost entirely redacted completely withheld the document claim attorney-client

privilege: B404-442; 446-448, 452, 454-455, 458-462, 464-470, 472-473, 475-482, 485-486,

488-494, 496, 500-501, and 507; and C656, 663 and 675-676.  Defendant Newman has the

following items listed on its on its privilege log for which it redacted/withheld the document

claim work-product doctrine: Entries 630-636 and 639-646.  Finally, it has the following items listed on it privilege log for which it redacted/withheld the document claim attorney-client privilege Defendant Newman University must establish that either attorney-client privilege or work-product protection applies. Entries B22, 24, 30-31, 162, 172, 210, 213, 307-309, 402 and 443-508; C652, 664 and 667-668.

Attached **Ex. 27** lists the Requests for Production Defendant at issues here, the entries from Log A, and also breaks down the redaction type for the Log B and C Entries identified in this section.

Here, Defendant has failed to make the required showing by producing a woefully inadequate one, and its privilege should be deemed waived.  For example, in 251 separate entries on the privilege log, Entries B404-B513 and C514-C655. Defendants have failed to provide any information for each entry other than the Bates range and privilege or privacy reason it is withheld.  For these entries, Defendant provides no date of the item, no author of item, no identity of recipient, no description of document and no justification for why it is work product or a privileged communication – instead the Log entry just directs Plaintiff to the produced document.  Even more disturbing, most of that missing information is not discernible from viewing the documents.   When Plaintiff pulled up the documents for these entries, Defendant has still failed to meet to provide sufficient information for Plaintiff and the Court to determine whether the documents are protected as most if not all of the documents themselves have all content redacted other than the date, receivers, sender and subject of the email.

Further, some entries reference documents for which the entire entry is redacted.  For example, Exhibit 12 is entry B447, which Defendant completely redacted; all that is available on the Log is the bates range and that the entry is work product and attorney-client privileged.  No

information is available on the document – **nothing**.  Exhibit 14 is entry B452 and has also been completely redacted.

Log C entries for C656-C676 do provide a little more information including a brief description but still fails to "describe in detail" the documents protected and provide "precise reasons" for the objection to the discovery.  See *Kannady,* 292 F.R.D. at * 644.

For 104 straight entries on its 2nd Privilege log (B404-B508), Defendant asserted all entries are attorney-client privileged or both work-product and attorney-client privileged.  All of these entries are inadequate.  Defendant has fully redacted many of these documents as work product and attorney-client privileged when the communications are between and among two or more Newman University employees or administrators, with no retained attorneys even included on the communication, and with no indication that this document or communication occurred in preparation for imminent litigation or at the direction of counsel.  See Ex. 16, Entry B493.

Some of these entries do include Lewis Brisbois attorneys on the communications, but there is still no indication these are protected work-product or attorney-client privileged.  For example, Exhibit 13 is entry B449, which is an email on December 3, 2017 from Title IX Coordinator to Lewis Brisbois attorneys and staff including Jeremy Schrag and Alan Rupe.  The subject of that email is Newman University –Title IX Investigations.  These entries still fail to comply with Rule 26(b)(5) and Kansas precedent.

This information on Log B (Entries B404-508) and all entries on Exhibit 7 Log C (C514-C676), for which attorney client privilege and/or work product doctrine is asserted by Defendant is insufficient to support these documents being withheld from production. Thus, Defendant has failed to establish these documents should be withheld from production, and Plaintiff requests

that Defendant be requested to remove these entries from their privilege log and fully produce them, unredacted to Plaintiff.

Defendant's privilege and work-product objections should be deemed waived as to Entries and Defendant should be ordered to produced these documents without redactions to Plaintiff forthwith.

For any privilege log entries that remain on the privilege log after the Court rules on the above referenced issues, Plaintiff requests this Court order Defendant to supplement its privilege log to provide additional information linking specific privilege log entries to discovery requests and any interrogatory it is responsive to so Plaintiff can evaluate the relevancy and not overwhelm the Court with requests for in camera review.

### 2. Documents responsive to Requests 13-17

Defendant did not object to Requests 13 to 17 based on attorney-client privilege or work-product doctrine.  However, privilege log entries suggest that responsive documents – namely notes and memorandums created by employees and responsive to these requests have been withheld by Defendant, but they have not noted any such objection to these Requests.  Thus, all documents responsive to these requests should be produced.

### 3. Attorney-client privilege does not prevent discovery of facts

The District of Kansas has held that facts contained in an otherwise privileged document are not protected from disclosure; underlying facts do not become privileged by simply relaying them to an attorney. *Perez v. Alegria*, No. 15-mc-401-SAC, 2015 WL 4744487, at *4 (D. Kan. June 24, 2015) (citing *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010)).

In Exhibit 1, Defendant has objected to answering Interrogatories 1, 2 and 8.   Facts responsive to Interrogatories 1, 2 and 8 are discoverable, and Defendant should be ordered to fully answer by providing all responsive facts.

### E.   FERPA

Defendant asserted objections based on the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g (2004) in response to Plaintiff's First Interrogatory No. 5 and 8 and Requests for Production Numbers 2, 10, 18, 32-43, 45-47, 49-57, 59-66, 68, 75-80, and 84-85.

Defendant has further withheld information under the guise of FERPA in response to Interrogatory 1 but did not note an objection or that FERPA information is being withheld.

Specifically, Defendant is withholding information under the guise of FERPA in response to: RFP 2 (statements made by or attributed to Plaintiff), RFP 8 (statements made by Defendant concerning Plaintiff's lawsuit), and 10 (documents related to statements made by Defendant referencing Plaintiff's employment); RFP 18 (related audio & visual recordings); RFP 32 (communications to or from Plaintiff while employed by Defendant); RFP 33-40 (communications between named Defendant staff and Plaintiff), 42 (communications between Defendant and Lisa DeLoach regarding Plaintiff), 45 (communications regarding Plaintiff); RFP 41 (communications between named Defendant staff and Plaintiff), 43 (communications between named Defendant staff and Plaintiff), 49-57 (email and other communications between named Defendant staff and Plaintiff), 59-65 (email and other communications regarding Title IX investigations); RFP 46-47 (documents, etc. relating to investigation of Plaintiff); RFP 66 (documents related to Casey Title IX complaint); 68 (documents related to Casey Title IX complaint); RFP 75-79 (Cabinet communications related to Title IX investigations); RFP 80

(Lewis Brisbois communications regarding Plaintiff); RFP 84 (audio & video recordings of Plaintiff); RFP 85 (meetings from Board meetings).  **Ex. 26** is a table that breaks down which FERPA Entries have been fully withheld from production, partially redacted and fully redacted.

### 1.   FERPA only protects student education records

First, if a requested document is *not* a student education record as defined by FERPA, FERPA protection does not apply.  *See Cummerlander v. Patriot Preparatory Academy,* No. 2:13-CV-0329, 2013 WL 12178140 at *1 (S.D. Ohio Sept. 13, 2013). If a requested document is not an educational record, then notice does not have to be provided to the student before the information is produced. *See id*.  Records that contain names and other personally identifiable student information are not automatically subject to FERPA, as Defendant incorrectly argues, instead those records must be "educational records."  *Cummerlander,* 2013 WL 12178140 at *1. Specifically, courts have held that incident reports relating to non-educational matters "are not educational records because, although they may contain names and other personally identifiable information, **such records relate in no way whatsoever to the type of records which FERPA expressly protects**; i.e., records relating to individual student academic performance, financial aid or scholastic probation which are kept in individual student files." *Cummerlander,* 2013 WL 12178140 at *1 (*quoting Bauer v. Kincaid*, 759 F.Supp. 575, 591 (W.D. Mo. 1991) (emphasis added)).  Counsel has not found any case that holds an email communication mentioning a student name is protected as an educational record by FERPA, nor has Defendant sited a such a case in the present case or the *Greenfield Case*. The communications and documents Plaintiff has requested are not "relating to individual student academic performance, financial aid or scholastic probation which are kept in individual student files." *Cummerlander,* 2013 WL 12178140 at *1.

When considering motions to compel and FERPA objections, federal courts have found that FERPA "does not create an evidentiary privilege . . . [and] documents covered by FERPA are indeed discoverable in the context of a civil action." *Morton v. Bossier Parish Sch. Bd.,* 2014 WL 1814213, at *3 (W.D. La. 2014) (unpublished)(quoting *Garza v. Scott & White Mem'l Hosp.,* 234 F.R.D. 617, 624 (W.D. Tex. 2005)); *see also Bauer v. Kincaid,* 759 F. Supp. 575, 589 (W.D. Mo. 1991); *Rios v. Read,* 73 F.R.D. 589, 598 (E.D.N.Y. 1977). In addition, FERPA regulations state that an educational institution "may disclose personally identifiable information from an education record of a student without the consent required . . . if the disclosure . . . is to comply with a judicial order or lawfully issued subpoena." 34 C.F.R. § 99.31(a)(9)(i).

FERPA is not a valid basis for refusing to produce discovery. *See e.g. DL v. Unified School Dist.#497,* 270 F.Supp.2d 1217, 1244 (D.Kan 2002); *C.T. v. Liberal School Dist.,* 2008 WL 394217 at *4 ("educational records may be disclosed without running afoul of FERPA so long as the school district notifies the parent or student of the disclosure and a protective order restricts the use of such information to this litigation only.").

After lengthy discussions about Defendant's FERPA objections, Plaintiff understands it is Defendant's position that any document that reflects a student record, or contains information that is regularly kept in a student record, is subject to FERPA and further it appears to be Defendant's position that any mention of a student, **including just the student's name** is subject to FERPA. Defendant is inconsistently either withholding such documents entirely or redacting information from the document. For example, Defendant has withheld all student complaints about Plaintiff of a student-employee who made two Title IX complaints in November 2017. (RFP 71). Additionally, Defendant has withheld the multi-page document that allegedly constitutes a student complaint about Plaintiff Walker. (*See* Entry A6, Ex 11). This information

is highly relevant to Plaintiff's claims and should be produced. Moreover, Plaintiff has no information that this student-employee has been contacted or whether the student-employee has consented to disclosure or not.

FERPA does not protect student complaints made against Plaintiff from discovery. *See Briggs v. Bd. of Trustees Columbus State Cmty. Coll.,* 2009 WL 2047899 (S.D.Ohio 2009) (records of student complaints against professor relate directly to professor, not students, and are not "education records"); *Hampton Bays Union Free School Dist. v. Public Employment Relations Bd.,* 878 N.Y.S.2d 485 (NY App. Div. 3d Dep't 2009) (records pertaining to allegations of teacher misconduct were not "education records" prohibited from release within the meaning of FERPA, as records contained information directly related to the teacher as opposed to a student disciplinary record which contains information directly related to the student); *Baker v. Mitchell-Waters,* 160 Ohio App.3d 250, 826 N.E.2d 894 (2005) (records relating to allegations of abuse or neglect of students by teachers are not subject to FERPA); *Ellis v. Cleveland Mun. Sch. Dist.,* 309 F.Supp. 2d 1019, 1022 (N.D. Ohio 2004)("student witness statements are not governed by FERPA").

In *Wallace,* an employee wrongful termination suit**,** the court held that statements provided by students in relation to investigation of school employee's misconduct did not directly relate to students and thus were not "education records" under FERPA. *Wallace v. Cranbrook Educ. Cmty.,* 2006 WL 2796135 (E.D.Mich.2006).   Initially, Cranbrook released the student statements to the plaintiff with the students' names and addresses redacted.   *See id*. After a magistrate ordered Cranbrook to produce the documents **without redaction**, including unredacted student names, Cranbrook objected, because it argued FERPA prohibited the disclosure of the student identifying information. *See id*. The District court upheld the

magistrate's order that the **unredacted** student statements were related to an employee and could be released to plaintiff, because employee records were an exception under FERPA and were not considered "education records. *See id*. If Newman was relying on student complaints as a reason for the adverse action taken, then those complaints are relevant, material, and they are not "student records" under FERPA.

Additionally, videotape of altercation between students that was recorded on school district video camera was not an "educational record" within the meaning of FERPA; videotape was recorded to maintain physical security and safety of the school building and did not pertain to the educational performance of the students captured on the tape. *Rome City School Dist. Disciplinary Hearing v. Grifasi, 806 N.Y.S.2d 381 (NY Sup 2005).* Thus, any recording of a student complaining about Plaintiff should be released to Plaintiff without redaction or alteration.

Certain documents Defendant did produce with its supplemental responses have significant redactions or have been withheld entirely under a FERPA "privilege" as indicated in Privilege Logs in Exhibits 4, 5, and 7. Based on the above authority, Trilli's notes, or anyone's personal notes that concern a Title IX investigation or investigation of Plaintiff, are not protected student records under FERPA and should be produced without redactions. Emails with the Vantage newspaper staff and text messages on personal phones are not "educational records." Title IX reports should be produced in their entirety without redaction. Minutes of meetings are not subject to FERPA.

Plaintiff suggested the parties request a Protective Order for FERPA documents from the Court. This would be the best way for Newman to produce requested documents that mention a student's name. Redacting the students' names is not efficient and leaves Plaintiff with meaningless information in light of the wholesale redactions of entire pages of material.

## 2. Seeking FERPA rulings from Court to significantly narrow discovery disputes

The parties have brief and argued fundamentally different positions as to what information is protected by FERPA in companion case before this Court, *Mandy Greenfield v. Newman University, Inc*., et al., Case NO. 2:18-cv-02655.  Many of those issues remain up in the air in *Greenfield*.

The parties differing views of FERPA matters even more in this case given the hundreds of FERPA redactions at issue here, and progress on discovery is stalled without additional guidance and rulings from the Court. Plaintiff lacks sufficient information to determine what FERPA protected records he wishes to compel at this time.

Plaintiff respectfully requests that this Court define "educational record" for the parties and specifically opine whether the following are subject to FERPA protections and the notice requirements to students:

1.      Every mention of a student's name, regardless of the type of document, record or recording containing the student reference;

2.      A student complaint about a teacher or faculty member;

3.      An audio recording of a faculty member's conversation with a student concerning complaints about a faulty member;

4.      An audio recording of a faculty member's conversation with a student witness in a Title IX investigation;

5.      Mention of a student in a faculty or administrator complaint about another faculty member;

6.      A Title IX complaint and related documents;

7.      Mention or reference to student in faculty, staff, administration or board meeting minutes;

8.      A witness statement in a Title IX investigation;

9.      The identification of a student name in any Title IX investigation materials;

10.     Correspondence with the editor of member of the student newspaper; and

11.     An email mentioning a student found a stolen file abandoned on campus.

Plaintiff respectfully requests that the Court order Defendant to produce, ***without redactions and without notice to any students***, any and all such documents that do not constitute educational records as defined by this Court, including any documents similar to Items one (1) through seven (7).

### 3.  Supplemental responses to Requests and privilege logs

Plaintiff requests that Defendant be ordered to supplement its responses to Requests 2, 10, 18, 32-43, 45-47, 49-57, 59-66, 68, 75-80, and 84-85 indicating, which students (identified by pseudonym) have been notified that their educational records have been requested in this lawsuit, what was specifically communicated to the students, when such notice was sent, and whether any response was received from the student.

Plaintiff also requests that Defendant be ordered to supplement its responses by specifically referencing the bates numbers or Privilege Log Line Number of responsive documents that have been redacted or withheld for any FERPA-related entries that remain protected after the other rulings in this motion so that Plaintiff can easily identify which documents on the privilege log are responsive to which request.  Plaintiff further re

For any FERPA entries that remain on the privilege logs after the Court rules on the above referenced issues, Plaintiff requests this Court order Defendant to supplement its privilege

log to provide additional information linking specific privilege log entries to discovery requests and any interrogatory it is responsive to so Plaintiff can evaluate the relevancy and not overwhelm the Court with requests for in camera review.

## F.   SPECFIC INTERROGATORY DISPUTES

**Interrogatory No. 2.**  Defendant has not agreed to adding corresponding bates numbers if responsive documents referenced in the answer have been produced and stating whether any FERPA notices have been sent to students who complained.

**Interrogatory No. 8.** Defendant has not agreed to provide "all reasons" Plaintiff's teaching contract was not renewed.   Plaintiff is entitled to a full and complete response to this interrogatory so that it can conduct discovery related to each reason.  Plaintiff further believes that Defendant's answer that "Plaintiff failed to act professionally and appropriately as is expected of a faculty member" is not specific enough to permit Plaintiff to conduct adequate discovery on this topic without more specificity.

## G.   REQUESTS IN DISPUTE UNRELATED TO FERPA.

### 1.   Relevancy of Discovery Requests

Fed. R. Civ. P. 26(b) provides that:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"'Discovery relevance is minimal relevance,' which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence." *Teichgraeber v. Mem'l Union Corp. of Emporia St. Univ.*, 932 F. Supp. 1263, 1265 (D. Kan. 1996)(internal citation omitted). Discovery relevance is broadly construed. *AKH Co., Inc. v. Universal Underwriters Ins. Co.,* 13-2003-JAR-KGG, 2015 WL 4523578, at *2 (D. Kan. July 27, 2015). As such, "discovery should be considered relevant if there is any possibility the information

sought may be relevant to the subject matter of the action." *Id. See also Williams v. Sprint/United Management Company*, Case No. 03-2200-JWL-DJW (D. Kan., February 27, 2007)(*citing Cardenas v. Dorel Juvenile Group, Inc.,* 232 F.R.D. 377, 382 (D. Kan. 2005)).

When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Smith v. Hillshire Brands*, Case No. 13-2605-CM, 2014 WL 2804188 (D. Kan. June 20, 2014).

**2.     Complete personnel files of involved administrators are discoverable**

The following requests seek the personnel files of the listed Newman employees who supervised Plaintiff or were in his supervisory chain: Requests No. 20 (Victor Trilli), 21 (Norren Carrocci), 22 (Defendant Kimberly Long), 23 (Jennifer Gantz), 24 (Fr. Joseph Gile) and 25 (Jill Fort).   These individuals played a central role in this case and are key witnesses to the events giving rise to this lawsuit.   Plaintiff is not seeking any tax forms or benefits as part of these personnel files.   Defendant has not agreed to produce any of these personnel files at this time despite the Court's prior opinion in the *Greenfield* that Carrocci's file is discoverable and the recent order compelling production of Trilli's file. Carrocci is the Newman University President who allegedly participated in the decision to terminate Plaintiff's employment. Gantz is an administrator, believed to be in Plaintiff's Chain of command, received updates on Title IX investigations and participated in the decision to terminate/not renew Plaintiff's employee. Fr. Gile is named numerous times throughout Plaintiff's petition as retaliating or being involved in retaliating against Plaintiff.   Jill Fort was also Plaintiff's supervisor, it is alleged and discovery has revealed that was she instrumental in Newman's decision to terminate Plaintiff's

employment, the defamation alleged in this case, and the retaliatory PFS action leading to the abuse of process and malicious prosecution claims.  Provost Long is a defendant in this case, made the decision to terminate Plaintiff's employment according to Defendant's response to Interrogatory No. 8, defamed Plaintiff, and filed a false, meritless and retaliatory PFS action against Plaintiff. Vic Trilli was on the President's Cabinet as the Vice President of Student Affairs and Athletic Director who was the subject of at least two of the Title IX claims in the fall of 2017 and is named in numerous paragraphs of Plaintiff Third Amended Complaint. These supervisory employees were either key witnesses or directly or indirectly involved in the retaliatory decision to  terminate Plaintiff's employment. Defendant's personnel files are relevant; the District Court of Kansas routinely holds they should be produced in cases like this.

The District of Kansas has held, many times, that in employment and civil rights cases, employee personnel files are relevant and discoverable when the person plays a central role in the case. *White v. Graceland College Center*, 586 F.Supp.3d 1250, 1259-60 (D. Kan 2008); *C.T. v. Liberal School District*, 2008 WL 394217, Case No. 06-2093-JWL (D. Kan. February 11, 2008).

The *White* case, which was an FMLA retaliation case, ruled that personnel files should be produced for those involved in the plaintiff's discharge. In so doing, the decision summarized the law on the discoverability of personnel records of defendants and important witnesses:

> Courts in the District of Kansas have generally held that an individual's employment records are relevant and/or reasonably calculated to lead to the discovery of admissible evidence, and therefore discoverable, if the individual (1) is alleged to have engaged in the retaliation or discrimination at issue, (2) is alleged to have played an important role in the decision or incident that gives rise to the lawsuit, or (3) is a key witness to the events giving rise to the lawsuit. This general rule is often applied in employment discrimination and civil rights cases, but has also been applied under other circumstances.

*White* at 1259-60.

In *C.T.*, a Kansas case involving Title IX and Negligent Supervision claims, the court

stated that the District of Kansas has generally held that:

> An individual's personnel file is relevant and/or reasonably calculated to lead to the discovery of admissible evidence, and therefore discoverable, if the individual is alleged to have engaged in the retaliation or discrimination at issue or to have played an important role in the decision or incident that gives rise to the lawsuit.

*Id.* The court concluded: "Indeed, courts in the District of Kansas have applied this rule in

'employment discrimination and civil rights cases, but have also applied it under other cases.'"

*Id.* (*citing Van Deelen v. Shawnee Mission School District*, No. 03-2018-CM, 2003 U.S. Dist.

LEXIS 21528 (D. Kan. Nov. 24, 2003)(§1983 case in which court compelled production of

personnel file of defendant employee who allegedly retaliated against plaintiff).[3]

The personnel files may be produced pursuant to the Protective Order which will address

any confidentiality concerns. Nothing in an employee's personnel file is subject to FERPA.  See

20 U.S.C. § 1232g(a)(4)(B)(iii) (education records **do not include** records made and maintained

---

[3] *See also Williams v. Bd. Of County Comm'rs*, No. 98-2485-JTM, 2000 WL 823909, at *5(D. Kan. June 21, 2000)(compelling production of personnel files of nonparty individuals who were alleged to be involved in the specific events giving rise to the lawsuit."); *Fox-Martin v. H.J. Heinz Operations*, No. 02-4121-JAR, 2003 WL 23139105, at *1 (D. Kan. Dec. 19, 2003) (Title VII action in which court compelled production of personnel files of employees who either played important roles in the employment decisions or allegedly participated in or witnessed the hostile work environment); *EEOC v. Kan. City S. Ry.*, No. 99-2512-GTV, 2000 WL 33675756, at *3 (D. Kan. Oct. 2, 2000) (Title VII action in which court compelled production of personnel file of supervisor who made decision to terminate plaintiff's employment); *Beach v. City of Olathe, Kan.*, No. 99-2210-GTV, 2000 WL 960808, at *2-3 (D. Kan. Jul. 6, 2000) (§ 1983 case in which court compelled production of personnel file of police officer alleged to be the driving force behind retaliatory action); *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 687-88 (D. Kan. 2000) (§ 1981 public accommodations case in which court compelled production of personnel files of employees alleged to have witnessed or participated in the claimed discrimination); *Daneshvar v. Graphic Tech., Inc.*, No. 97-2304-JWL, 1998 WL 726091, at *5 (D. Kan. Oct. 9, 1998)(Title VII case in which court compelled production of personnel files of three "key witnesses" who "played important roles in the employment decisions affecting plaintiff"); *Krenning v. Hunter Health Clinic, Inc.*, 166 F.R.D. 33, 35 (D.Kan.1996) (compelling production of personnel files of alleged harasser and employer's chief executive officer); *Hoskins v. Sears, Roebuck and Co.*, No. 96-1357-MLB, 1997 WL 557327, at *2 (D.Kan. Sept. 2, 1997) (compelling production of personnel files of "eight individuals who are alleged to have been involved in, witnessed, or failed to report" the claimed harassment).

in the normal course of business which relate exclusively to the educational institutions' employees in their capacity as employees and are not available for use for any other purpose).

3.     **Identifying responsive documents and supplementing responses**

The original responses to the Requests for production and even the supplemental responses do not always identify which documents are responsive to a particular Request by Bates numbers, and when they do, the responses do not include the bulk of Defendants production through the 17,000+ documents produced. These Requests include 2, 3, 5, 8, 10, 18, 29, 32, 33-40, 41-43, 45-46, 47, 49-62, 63, 64-66, 68-71, 73-74, 75-79, 80, 84, 85-90, and 92. Some of these requests the parties reached some agreement, and Defendant's position is unclear on others.

4.     **Agreement Reached by Parties**

The parties have generally reached partial agreement as to the supplementation of Defendant's responses to interrogatory Nos. 1, 2, 4, 5, 6 and 7 consistent with the following:

**Interrogatory No. 1.** You have agreed to supplement Defendant's answer by: replacing the word "identified" with "produced," adding corresponding bates numbers if responsive documents referenced in the answer have been produced and stating whether any FERPA notices have been sent to students who complained.

**Interrogatory No. 2.** You have agreed to supplement Defendant's answer by: replacing the word "identified" with "produced," and stating whether Defendant Newman University conducted an investigation of Plaintiff, the dates of any said investigations and the individuals who conducted the investigation. Defendant has not agreed to adding corresponding bates numbers of responsive documents referenced in the answer have been produced and stating whether any FERPA notices have been sent to students who complained.

**Interrogatory No. 4.** You have agreed to supplement Defendant's answer by stating whether Defendant Newman University conducted any such investigation in response to Plaintiff's EEOC charge and the individuals who conducted the investigation.

**Interrogatory No. 5.** You have agreed to supplement this answer by stating

whether any FERPA notices have been sent to students who complained.

**Interrogatory No. 6.**  You have agreed to supplement this answer by identifying the individuals who made verbal complaints to Dr. Fort.

**Interrogatory No. 7.**  Defendant agreed to supplement by providing a complete answer without objection.

Additionally, Defendant agreed to identify which documents are responsive to a particular Request by Bates numbers. Defendant agreed to identify responsive documents by bates number for Requests 33-40. Defendant agreed to withdraw its objection to Request 44 and fully respond.  Defendant agreed to withdraw its objections to Requests 29 (other claims of retaliation) and 30 (other lawsuits claims) and respond consistent with the Court's order in *Greenfield*. Defendant's counsel has agreed to do so, but because this has not been done, it is creating a hardship on Plaintiff as she must proceed with discovery to meet the deadlines in this case.  Defendant agreed to identify any prior investigation of Plaintiff for Request 47.  For Requests 49-62, Defendant agreed to supplement by identifying responsive documents and identifying responsive documents that have been withheld or indicating that no responsive documents have been withheld.  Defendant agreed to supplement 73-79, 85-86, 88 and 92 including complete information as to decision made in response to Request 73.  Defendant agreed to check and identify all audio and video being withheld due to FERPA or other privacy or privilege grounds for Request 84 and identify those that had not also been produced by Plaintiff.  It appears to Plaintiff that at least one recording is being withheld from production that Plaintiff does not have and possibly others.

Defendant did agree to provide information concerning any individual given notice pursuant to FERPA, but if Defendant has agreed to do that for all Requests or only certain ones. It is also unclear exactly what information Defendant has agreed to provide.

5.      **Other requests with no agreement between parties**

It was clear that Defendant and Plaintiff did not reach agreement as Defendant did not reach agreement on the following, and Plaintiff is seeking to compel Defendant's full responses to these requests including RFPs 46, 87, 89 and 90.  Additionally, Defendant did not produce all documents pertaining to any Title IX investigation at Newman during the 2017-18 school year (RFP 43) and information and communications provided to Lewis Brisbois investigators regarding Plaintiff in 2017 and 2018 (RFP 80), which Plaintiff seeks to compel.

Defendant has not produced the Metadata as to typed notes created by Long, Link, Deloach and Gantz, and Plaintiff seeks to compel production on this data.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that Defendant be ordered to withdraw its objections and respond in full to Plaintiff's discovery requests as requested herein, for the Courts ruling on information protected by FERPA issues so that Plaintiff can evaluate which entries to seek to compel, and for such other relief as the Court deems just and proper.

Dated: December 9, 2019                    Respectfully submitted,


                                            _/s/ Erin N. Vernon_____
                                            Sarah A. Brown, KS #12130
                                            Dan Curry, KS #22750
                                            Erin N. Vernon, KS #25792 (Of Counsel)
                                            1600 Genessee Street, Suite 956
                                            Kansas City, MO 64102
                                            (816) 756-5458; (816) 666-9596 (fax)
                                            sarah@brownandcurry.com
                                            dan@brownandcurry.com
                                            erin@brownandcurry.com
                                            ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2019 the foregoing document was served by the Court's electronic filing system upon the following parties of record:

Nanette Turner Kalcik, #24030
Ellen C. Rudolph, KS #27945
Lewis Brisbois Bisgaard & Smith, LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, Kansas 67206
(316) 609-7900
(316) 462-5746
nanette.kalcik@lewisbrisbois.com
ellen.rudolph@lewisbrisbois.com

ATTORNEYS FOR DEFENDANTS

*/s/ Erin N. Vernon*
ATTORNEY FOR PLAINTIFF