# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN WALKER, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:19-cv-2005-DDC-TJJ |
| | ) |
| NEWMAN UNIVERSITY, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Compel (ECF No. 90). Plaintiff asks the Court to compel complete responses without objection to Plaintiff's First Interrogatories and First Request for Production of Documents to Defendant Newman University, and raises challenges to Newman's privilege log. Plaintiff also sought rulings on FERPA-related issues, which the Court has resolved following *in camera* review and written rulings. As set forth below, the Court grants Plaintiff's motion in part and denies it in part.

### I.    Relevant Background

This discovery dispute has a long background, and many of the issues related to it have been the subject of hearings, telephone conferences, *in camera* review of documents and other forms of media, and additional briefing. Plaintiff served his first request for production of documents and first interrogatories to Newman on July 24, 2019. Newman's first responsive document was its objections and answers to interrogatories, which it served on September 23, 2019. Those were followed with responses and objections to the request for production of documents and Newman's first privilege log on October 10, 2019. Newman continued to produce supplemental privilege logs, first on November 7, 2019 (along with supplemental responses to requests for production), again on December 3, 2019, and finally on June 26, 2020. Along the way, the issues have been narrowed. The Court now rules on those that remain.

With the exception of one issue as noted below, the Court finds the parties have conferred in attempts to resolve the issues in dispute without court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2.

## II.     Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery. As amended, it provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[1]

Considerations of both relevance and proportionality now govern the scope of discovery.[2] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[3] Information still "need not be admissible in evidence to be discoverable."[4] The amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase, however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[5]

---

[1] Fed. R. Civ. P. 26(b)(1).

[2] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[3] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[4] Fed. R. Civ. P. 26(b)(1).

[5] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[6] Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations. If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[7] In other words, when the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[8] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[9] Relevancy determinations are generally made on a case-by-case basis.[10]

"A party asserting an unduly burdensome objection to a discovery request has 'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.'"[11] The objecting party must also show "the burden or expense is unreasonable in light of the benefits to be secured from the

---

[6] *Id.*

[7] *Id.*

[8] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[9] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[10] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[11] *Stonebarger v. Union Pac. RR Co.*, No. 13-2137-JAR-TJJ, 2015 WL 64980, at *5 (D. Kan. Jan. 5, 2015) (quoting *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10–2514–RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011)).

discovery."[12] Objections that discovery is unduly burdensome "must contain a factual basis for the claim, and the objecting party must usually provide 'an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'"[13]

### III.   Analysis

With the legal standards in mind, the Court considers the discovery at issue. However, Plaintiff's motion is not easy to follow. References to the same discovery request appear in more than one section, with a different argument in each. Although lengthy, the motion is light on legal analysis. The reply raises some new arguments for the first time that are not simply responsive to Newman's opposition, which the Court will not consider.[14] To the extent Plaintiff has stated and maintains challenges that the parties have conferred about in good faith, the Court considers and rules on them.

Plaintiff seeks to compel Newman to provide additional information in connection with several of Newman's objections based on attorney-client privilege and work product doctrine, including further detail on Newman's privilege log. Plaintiff also challenges whether Newman has withheld from production certain responsive documents without recording those documents on its privilege log.

Plaintiff seeks the complete personnel files of five Newman administrators who supervised Plaintiff or were in Plaintiff's supervisory chain. Plaintiff also asserts that Newman

---

[12] *Id.*

[13] *Id.*

[14] "The Court will not consider arguments raised for the first time in a reply brief, particularly where the arguments could have been made in the first instance." *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 378 F. Supp. 3d 975, 989 (D. Kan. 2019) (quoting *Swimwear Solution, Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1044 (D. Kan. 2018) (internal quotation marks and citation omitted)).

has failed to supplement certain interrogatory answers as agreed, and raises unresolved issues regarding Newman's responses to certain document requests. The Court considers each in turn.

### A. Privilege log

On June 29, 2020, following the conclusion of Newman's production of documents pursuant to this Court's orders resolving the protracted issues involving FERPA, Newman produced to Plaintiff its Second Supplemental Privilege Log to replace all previously served logs. Newman stated it had revised log entries to be more specific, as Plaintiff requested; removed the FERPA entries from the log, as the FERPA processes and productions have been completed; and removed documents that Newman is willing to produce as a compromise with Plaintiff in response to this motion to compel.[15] At this point, the Court does not know whether Newman's Second Supplemental Privilege Log addresses all of Plaintiff's objections to the earlier versions Newman produced.

Although the Court is reluctant to leave unresolved any issue raised in this motion, the Court will permit Plaintiff five business days from the date of this order in which to notify the undersigned Magistrate Judge of any challenge to Newman's Second Supplemental Privilege Log.[16] The parties have had ample time to discuss any remaining disagreements concerning the final log, and the Court will not consider taking any action without a strong showing that the parties have met and conferred in good faith and have been unable to resolve their disagreement.

### B. Request for Production Nos. 13, 15-17

Plaintiff contends that because Newman did not object to these RFPs, it should have produced all responsive documents. Entries on an earlier Newman privilege log lead Plaintiff to

---

[15] Newman provided this explanation in an email dated June 26, 2020 from Alan Rupe to the undersigned Magistrate Judge and Plaintiff's counsel.

[16] Notification should be by email to Judge James and defense counsel. The Court will decide on expedited next steps after reviewing the email.

5

suspect that Newman has instead withheld some responsive documents as privileged. Defendant denies it has withheld any documents responsive to these RFPs, and states it has produced all such documents within its possession. Without further evidence that Newman has inappropriately withheld documents, the Court denies Plaintiff's motion with respect to these RFPs. The Court is hopeful that Newman's Second Supplemental Privilege Log has resolved any lingering ambiguity.

### C.     Interrogatory Nos. 1, 2, and 8

In Section IV(D) of the motion, Plaintiff states that Newman objected to answering Interrogatory Nos. 1, 2, and 8 on the basis of privilege, and in a single sentence Plaintiff argues conclusively that facts responsive to those interrogatories are discoverable and the Court should order Newman to fully answer them. In Section IV(F), Plaintiff contends that Newman has not agreed to add corresponding bates numbers if it has produced responsive documents referenced in its answer to Interrogatory No. 2, and that Newman's answer to Interrogatory No. 8 lacks specificity and is incomplete.

Interrogatory No. 1 states as follows: "Identify all conversations and written communications that are related to the contention in the Notice of Non-Reappointment that Plaintiff was perceived as threatening to his colleagues and students." Newman's answer states that it will not produce documents that are protected as attorney-client privilege or work product, and identifies the following facts:

> Defendant identifies the information contained in response to Interrogatories Nos. 5 and 6 as responsive to this request. On December 8, 2017, Jill Fort met with Provost Kim Long to discuss student and faculty complaints regarding Plaintiff's behavior. Provost Long memorialized this conversation in an e-mail to Jennifer Gantz on December 10, 2017. President Noreen Carrocci, her Cabinet, and Security Director Mo Floyd discussed the concerns raised by faculty and staff on Monday January 8, 2018.

In response to this motion, Newman also agreed to identify by bates number all

6

documents referred to in its answer to Interrogatory No. 1. Given Plaintiff's minimal challenge, the Court finds Newman's answer sufficient. If Newman has not provided bates numbers, it shall do so within five business days of the date of this order.[17]

Plaintiff's Interrogatory No. 2 states as follows: "Was John Walker the subject of any investigation by Defendant or any of its agents during the 2017-2018 academic year, and if so please state who conducted the investigation, identify each person interviewed as part of the investigation, and identify who received the results of the investigation." Newman repeats the same privilege objection and also objects that the word "investigation" is vague. In responding to the motion, however, Newman abandons this latter objection. The word "investigation" is not vague, particularly in the context of this case. If Newman has not supplemented this answer, produced all non-privileged responsive documents, and provided bates numbers for responsive documents it has produced, it shall do so within five business days of the date of this order.

In Interrogatory No. 8, Plaintiff asks Newman to "Please state all reasons that Plaintiff's teaching contract [was] not renewed in 2018, and identify all individuals who participated in such decision." Plaintiff takes issue with Newman's statement in its answer that "Defendant does not represent that the answers herein are all facts that may support the decision not to renew his teaching contract." Plaintiff argues he is entitled to a full and complete response, and the quoted statement concedes Defendant has not provided one. The Court has reviewed Newman's response and finds it adequate.[18] This topic goes to the core of Plaintiff's complaint, and an

---

[17] To the extent it has not already done so, within five business days of the date of this order Newman shall identify which of the documents it has produced are responsive to which interrogatory and request for production.

[18] Newman objected that the interrogatory is overly broad and unduly burdensome, but has abandoned those objections in response to this motion. However, the Court finds that to the extent Plaintiff expects every fact to appear in Newman's response, the request would be overbroad.

7

interrogatory answer cannot encapsulate every fact. Again, if Newman has not provided bates numbers for documents it produced in response to this interrogatory, it shall do so within five business days of the date of this order.

In his reply in support of the motion to compel, Plaintiff raises a challenge to Newman's answers to Interrogatory Nos. 4-7. But in his motion, Plaintiff states only that the parties reached partial agreement regarding supplementation of Newman's answers to those interrogatories. Accordingly, no ruling is necessary. If Newman has not supplemented its answers as agreed, it shall do so within five business days of the date of this order.[19]

### D. Request for Production Nos. 20, 21, 23, 24, 25

Plaintiff contends he is entitled to the complete personnel files[20] of Victor Trilli, Norren Carrocci, Jennifer Gantz, Fr. Joseph Gile, and Jill Fort because these supervisory employees were either key witnesses or directly or indirectly involved in the decision to terminate Plaintiff's employment. Newman objected to each such request on the grounds that it is overbroad and not proportional to the needs of this case.

The parties agree that employment records of an individual are discoverable in an employment discrimination case if "the individual (1) is alleged to have engaged in the retaliation or discrimination at issue, (2) is alleged to have played an important role in the decision or incident that gives rise to the lawsuit, or (3) is a key witness to the events giving rise to the lawsuit."[21] The Court considers each request according to this guidance.

Plaintiff identifies Vic Trilli as serving on the President's Cabinet as Vice President of

---

[19] To the extent it has not already done so, within five business days of the date of this order Newman shall serve all supplemental discovery responses it has agreed to provide.

[20] Plaintiff does not seek any tax forms or benefits information that may be included in the files.

[21] *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1259-60 (D. Kan. 2008).

Student Affairs and Athletic Director, the subject of at least two of the Title IX claims in the fall of 2017, and points out that Trilli is named in numerous paragraphs of Plaintiff's Third Amended Complaint. Plaintiff also notes that the Court ordered Newman to produce Trilli's personnel file in *Greenfield v. Newman University, Inc., et al.*, Case No. 2:18-cv-2655-DDC-TJJ. Defendant counters that Trilli was not involved in the decision to terminate Plaintiff's employment, but was merely investigated by Plaintiff. According to the Third Amended Complaint, Plaintiff was the investigator in the two Title IX claims that included Trilli as their subject. Plaintiff's complaint alleges that in November 2017, he complained to Human Resources that he was being subjected to a hostile work environment and retaliation from the time he had been assigned the first of the two investigations about Trilli and others. He also became concerned that Trilli was retaliating against the person who had replaced Trilli as the complainant's supervisor while the investigation was ongoing. Ultimately, Plaintiff alleges, his speaking out against such retaliation contributed to the termination of Plaintiff's employment. The Court finds that, at a minimum, Trilli is a key witness to the events giving rise to the lawsuit. The request for Trilli's personnel file is not overbroad or disproportionate to Plaintiff's needs in this case, and Newman shall produce it.

Carrocci is the Newman President. Plaintiff alleges Carrocci participated in the decision to terminate his employment. Plaintiff also points out that the Court ordered Newman to produce Carrocci's personnel file in *Greenfield v. Newman University, Inc., et al.*, Case No. 2:18-cv-2655-DDC-TJJ. Newman contends that Plaintiff's Third Amended Complaint does not allege that Carrocci participated in the decision to terminate Plaintiff's employment. However, Newman acknowledges that Carrocci was generally a witness to some things cited in the complaint. Specifically, Plaintiff alleges that a file stolen from his office came into Carrocci's possession, but she denied having it and directed Newman's Director of Security to lie about the file's whereabouts. Plaintiff also alleges that Carrocci knew about a Petition for Protection from

Stalking Defendant Long filed against Plaintiff, and that Carrocci reported on it to Newman's Executive Board in connection with the defense of this lawsuit. The Court finds that Carrocci's involvement also makes her a key witness to the events giving rise to the lawsuit. The request for Carrocci's personnel file is not overbroad or disproportionate to Plaintiff's needs in this case, and Newman shall produce it.

Jennifer Gantz is an administrator whom Plaintiff believes was in his chain of command. Plaintiff asserts Gantz received updates on Title IX investigations and participated in the decision to terminate or not renew Plaintiff's employment. Defendant argues that Plaintiff alleges none of these facts in his Third Amended Complaint. The only factual allegations Plaintiff makes against Gantz in the complaint are that she, along with Carrocci, possessed the file stolen from Plaintiff's office and directed Newman's Director of Security to lie about the file's whereabouts. Plaintiff does not allege that Gantz retaliated against him, played a role in Plaintiff's termination, or is a key witness giving rise to this lawsuit. Plaintiff's allegations do not demonstrate that Gantz's personnel file is relevant, and Newman need not produce it at this time.

Plaintiff's justification for obtaining Fr. Joseph Gile's personnel file is that he is named in Plaintiff's Third Amended Complaint as retaliating or being involved in retaliation against Plaintiff. Defendant argues that Plaintiff has made no showing that Fr. Gile fits into a category that warrants disclosure of his employment records. Plaintiff's Third Amended Complaint alleges that Fr. Gile became Plaintiff's supervisor in June 2017, and it recounts various conversations between Plaintiff and Fr. Gile. But Plaintiff does not allege that Fr. Gile retaliated against him, played a role in Plaintiff's termination, or is a key witness to events giving rise to this lawsuit. Plaintiff has not demonstrated that Fr. Gile's personnel file is relevant, and Newman need not produce it at this time.

In his motion, Plaintiff alleges that Jill Fort was his supervisor. He also contends Fort was instrumental in Newman's decision to terminate Plaintiff's employment, in the defamation he

alleges, and in the retaliatory Protection from Stalking action that underlies his claims of abuse of process and malicious prosecution. Defendant points to the absence of Fort's name in Plaintiff's Third Amended Complaint and denies knowledge of any discovery that would support the allegations in the motion. Plaintiff's bare allegations in his motion do not provide a basis for him to obtain Fort's employment records. Newman need not produce Fort's personnel file at this time.

### E. Request for Production Nos. 43, 46, 80, 87, 89, and 90

In a single paragraph at the conclusion of his motion, Plaintiff seeks to compel Defendant to produce documents responsive to these six requests. But Plaintiff provides no argument or basis other than to acknowledge that the parties did not reach agreement on four of the six requests. Defendant goes further, denying that the parties conferred about these six requests. The Court will not consider any issue on which the parties have not conferred. Plaintiff's motion is denied with respect to these requests.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Compel (ECF No. 90) is **DENIED in part and GRANTED in part.** Where ordered, Defendant Newman University, Inc. shall supplement its answers, produce documents, and designate bates numbers **within five (5) business days of the date of this order**. In addition, **within five (5) business days from the date of this order**, Plaintiff shall notify the undersigned Magistrate Judge of any challenge to Newman's Second Supplemental Privilege Log.

**IT IS SO ORDERED.**

Dated this 30th day of July, 2020, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge